HOLLAND HODGES and others v. JAMES COUNCIL and others, Adm'rs.

*Guardian and Ward—Sureties—Limitations and Presumptions.*

1. A guardian appointed in 1841, is not himself protected by lapse of time against an action on his bond and for an account of the trust fund; but his sureties are discharged if the ward does not within three years after attaining majority call upon the guardian for a full settlement. Rev. Stat., ch. 65, § 7.

2. In such case, only a presumption of payment arises within ten years after the right of action accrues (Rev. Stat., ch. 65, § 13); and *it seems* that the period of time for the presumption is to be counted from the arrival of the several wards at full age—excluding the interval during which the statute was suspended.

(*Edwards* v. *University,* 1 Dev. & Bat. Eq., 325; *State* v. *McGowen,* 2 Ired. Eq., 9; *Hamlin* v. *Mebane,* 1 Jones Eq., 18; *Davis* v. *Cotten,* 2 Jones Eq., 430; *Ivy* v. *Rogers,* 1 Dev. Eq., 58, cited, commented on and approved.)

CIVIL ACTION tried at Spring Term, 1881, of WATAUGA Superior Court, before *McKoy, J.*

This action commenced on the 19th day of April, 1880, is prosecuted against the defendants, as administrators of Benjamin Council, guardian, for an account and settlement of the trust estate committed to the hands of the intestate, and for the recovery of the sums which may be found due to the

several wards. The material facts admitted, or if controverted, found by the jury, are as follows:

Joseph C. Mast, the grandfather, from whose estate the funds were obtained, died in 1841, intestate, and thereafter during the same year the said Benjamin Council who had married a daughter, then deceased, was appointed and qualified before the proper court, as guardian to their infant children, the plaintiffs Elizabeth and Joseph, and the intestates of the other plaintiffs in the action, and as such received their distributive shares. The plaintiff Elizabeth married the plaintiff Holland in 1852, and attained her majority in 1856; the plaintiff Joseph became of full age in 1854, and of the intestates, Jacob died in 1865 at the age of 42 years, Sarah (who, while still an infant married one Ebenezer Smith, who died during the late civil war,) died herself in 1878, having reached her 53rd year, and John, neither begotten nor born in wedlock, the remaining ward, died about 1859, when 36 years old. It thus appears that Elizabeth had attained her majority, 24 years; Joseph, 26 years; Sarah, 33 years; John 35 years, and Jacob 36 years, previous to the issuing of the summons in the suit.

Upon the rendering of the verdict and at the instance of the plaintiffs' counsel, the court adjudged they were entitled to an account, and ordered a reference to ascertain and report the property and effects, and the value thereof which came, or ought to have come into the possession of the guardian by virtue of his said office and his administration of the trust fund. From this judgment the defendants appeal.

*Mr. J. F. Morphew,* for plaintiffs.
*Mr. G. N. Folk,* for defendants.

SMITH, C. J., after stating the foregoing facts. Two defences are set up against the maintenance of the action, and exception is also taken to the order of reference consequent upon the adverse rulings:

1. The bar of the statute of limitations.

2. Payment and satisfaction, the presumption of which arises under the statute from the lapse of time since the wards became of full age.

I. There is no statutory limitation of time prescribed for bringing the action to obstruct the plaintiffs' recovery, and the first defence is untenable.

The guardian has entered into bond for the faithful discharge of his official duties in securing, managing and delivering over the trust estate to his wards, and thus added his personal covenant to perform to the obligation incurred by the acceptance of the appointment, and growing out of the legal relations subsisting between himself and them; and the law in force and governing the present case fixed no determinate period in which the remedy on the bond must be pursued against *him*, while it did protect the sureties after a delay of three years. Rev. Stat., ch. 65, § 7. The present suit to enforce this legal obligation against the guardian only, encounters no such legal impediment.

II. It has been repeatedly declared by this court, that the statutory presumption of payment or satisfaction on all judgments, contracts and agreements arising within ten years after the right of action accrues, (Rev. St., ch. 65, § 13,) has no application to an express trust, open and unperformed, because the relations thus formed are not adversary until they are made so by some act of the trustee, in repudiation of the trust and known to the *cestui que trust;* and then, as in case of a trust declared by the court, and founded in fraud or the like, the latter must assert his equity within a limited time, in analogy to the rule at law, or relief will be denied. Where this occurs, the statute is put in motion and the presumption it draws from long inaction prevails alike when the proceeding is in equity as when the action is presented at law. *Edwards* v. *University*, 1 Dev. & Bat. Eq., 325; *State* v. *McGowen*, 2 Ired. Eq., 9; *Hamlin* v.

*Mebane,* 1 Jones Eq., 18; *Davis* v. *Cotten,* 2 Jones Eq., 430, and other cases. See also *Godden* v. *Kimmell,* 99 U. S., 201. "It has been invariably maintained," is the conclusion reached by the author of the work on limitations, after a careful consideration of adjudged cases, "that if a trustee should deny the right of his *cestui que trust,* and assume absolute ownership of the property he holds in trust, he abandons his fiduciary character, and the *cestui que trust* must commence legal proceedings against him within the prescribed time;" and he adds as illustration that "after a ward comes of age the fiduciary relation of the guardian ceases, and they thereafter stand as debtor and creditor," and the ward's claim falls under the operation of the restricting statute. Angel Lim., §§ 174, 178. The proposition is fully sustained by the reference.

In *Green* v. *Johnson,* 2 Gill and John., (Md.) 389, the court say that " when the ward is emancipated from the authority of his guardian by reaching the age prescribed by law, his *cause of action is complete.* The relation which existed between them *ceases to be a subsisting trust;* an action of account may be immediately instituted in a court of law, and from that time, the act of limitation dates the commencement of the action."

In *Ivy* v. *Rogers,* 1 Dev. Eq., 58, the bill was filed before the passage of the act of 1826, reducing the time prescribed by the common law for raising the presumption of adjustment. TAYLOR, C. J., dates the beginning of the period to the time when the final administration account was rendered, because, as he explains, "the account thus stated enabled all parties concerned in interest to ascertain the sum acknowledged to be respectively due them; to enforce the payment if they were satisfied with the correctness of the accounts, or to reopen them if they were dissatisfied."

It would seem the like effect should be given to the rendition of the guardian account after the infant attains his

majority, and the matter is adverted to and left undecided in the opinion of PEARSON, J., in *Hamlin* v. *Mebane, supra,* wherein after reiterating the rule which protects express trusts from the consequences of the lapse of time, he adds, " we do not feel called upon to say whether the case of a ward who fails to call his guardian to account is within the scope of the rule."

The instructions of the court proceed upon the idea that the plaintiffs' claims remain in full force, unimpaired by delay, until by a demand of settlement and a refusal, the intestate's relations, as trustee, are changed and become antagonistic towards his wards, and thus the statute is put in motion. Accordingly the question of a precedent demand was submitted to the jury and they find there was none.

Upon the trial of the issues the defendants insisted that the claims were presumed to have been satisfied and there was no rebutting evidence. The court did not so direct the jury, but instructed them that if a demand was made more than three years before the commencement of the suit, then as to such of the plaintiffs as made the demand, their right of action would be barred.

While the court properly refused to say there was no rebutting evidence furnished in the testimony of the witness who, seven years previous to the trial, saw the guardian in apparent distress and heard him say "that Holland (husband of his daughter Elizabeth) had threatened to sue him on an old bond, and that he ought not to do so as he was adding to his estate, and they would get it all when he died," asking the witness at the same time to see Holland and stop it; yet in our opinion it was an error not to inform them of the legal presumption, and leave the force of the repelling evidence to be weighed against it.

It will be noticed that there is no saving of the rights of married women in the enumeration of the disabilities of others in the act which limits the action against the sure-

ties to a guardian bond to the space of three years next after the ward's attaining his majority, an omission to which attention is called and the reason assigned for it given in the case of *Hamlin* v. *Mebane,* and that in the act of 1826 shortening the period for the presumption, there is no saving clause and no personal disabilities are placed beyond its reach.

At the same time this is not like a statute limiting the action, an inflexible rule of law, but a rule of evidence to which an artificial effect is added, and open to disproof of the inferred fact. Doubtless this negative evidence would be strengthened by showing such relations between the parties as may tend to explain the inaction and delay, as does continuous insolvency, in bringing the suit.

We have considered the action as intended to enforce the covenant obligation, and not as a mere equitable suit substituted for an action of account.

Under the former acts of limitation by which the facts of this case are governed, there was no time prescribed for su_ ing upon an instrument under seal, and hence the only defence, to which the plaintiffs' claims are exposed, must be drawn from the presumption created at common law and sanctioned by our own statute.

While we leave the point undecided, we are inclined to hold that the period of time for the presumption is to be counted from the arrival of the several wards at full age, excluding therefrom the interval during which the statutory presumption was suspended. The case was not so presented to the jury, but the right of action made to depend entirely upon the question of demand. We do not see why if the statute of presumption begins to run, as held in *Ivey* v. *Rogers, supra,* against a personal representative from the filing and auditing of his final administration account, when sued by those entitled to the fund, it does not also begin, as against a guardian, from the termination of his office and

his rendering to the proper court his final guardian account. It does not appear here that the intestate made any returns, but even in their absence it was his duty to settle and the wards' right to make him settle as soon as the ward had legal capacity to act, and to this definite obligation the statute must apply.

For the error mentioned there must be a new trial and it is so adjudged.

Error. *Venire de novo.*